# COURT OF APPEALS OF VIRGINIA

**Record No. 1058-25-2**

CRAIG ANTHONY FORDHAM, S/K/A
CRAIG ANTHONY FORDHAM, JR.
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Callins, Duffan and Senior Judge Clements

Argued by videoconference

Opinion Issued July 14, 2026[*]

### FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Jayne A. Pemberton, Judge

Gregory R. Sheldon (BainSheldon, PLC, on brief), for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE JEAN HARRISON CLEMENTS

The trial court convicted Craig Anthony Fordham of attempted arson after he and another perpetrator taped fireworks together, lit their combined and altered fuse, and taped the burning bundle to the wooden windowsill of a house.[2] On appeal, Fordham argues that the evidence did not prove that he intended to burn or destroy the house in whole or in part. He also asserts the bundle taped to the windowsill was not an "explosive device" under the arson statute. Finding no error, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] The court also convicted Fordham of misdemeanor vandalism; he does not challenge that conviction on appeal.

BACKGROUND[3]

Mike Brown "had some business together" with Ian Kelley and, upset with him, wanted to teach him "a lesson." Brown spoke to Jay Gowda about Kelley, and Gowda introduced Brown to Fordham. For over a year, Brown "kept asking" Gowda what to do about Kelley. Eventually, Gowda suggested that they "break a window." Gowda had three "mortar shell" fireworks, which he gave to Fordham. Gowda and Fordham then went to Kelley's house.

After parking across the street from Kelley's house, Gowda held the fireworks while Fordham taped them into a bundle with duct tape, leaving extra tape at the ends to affix the bundle to Kelley's window. Then, they tied the fuses around an incense stick to allow them time to get away before the bundle exploded. After Fordham lit the incense stick, Gowda crossed the street, attached the bundle to a wooden windowsill of Kelly's home, ran back to the car, and the pair drove away. The fireworks did not explode.

The following afternoon, Kelley's wife noticed the bundle outside the dining room window and asked Kelley to look at it. Upon inspection, Kelley observed what "appeared to be three large fireworks duct[-]taped together and strapped to the side of the house." Kelley called the police.

Fire Marshal Michael Lancaster arrested Fordham after his fingerprint was recovered from the bundle. Lancaster, an arson source investigation expert, opined that the bundle was an improvised explosive device consisting of consumer-grade fireworks. The fuses of the three fireworks had been wound together, and an incense stick was taped to the fuses "to slow the burning process to the fuse[s]." Lancaster observed that the incense stick was charred, indicating that "it had

---

[3] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

been lit." The incense stick had burned down until it contacted the duct tape, which extinguished it. Lancaster sent the bundle to the Department of Forensic Science, which determined that the three fireworks contained black powder and pyrotechnic chemicals.

A grand jury indicted Fordham for manufacture of an explosive device under Code § 18.2-85, and attempted arson under Code §§ 18.2-26 and -77. During his motion to strike at trial, Fordham argued that fireworks are excluded from the definition of "device" under Code § 18.2-85 and that the bundle he and Gowda assembled consisted of fireworks. He also contended that, because the bundle consisted of fireworks, it should not be considered an "explosive device" under Code § 18.2-77. Further, Fordham claimed the evidence showed he only intended to break the window, not to burn or destroy the house.

The court struck the manufacturing an explosive device charge because fireworks are excluded from the definition of "device" under the manufacturing statute, but denied the motion regarding the attempted arson. The court acknowledged that the parties disputed whether an "explosive device" under the arson statute is equivalent to a "device" under the manufacturing statute. But the court ruled that it is sufficient under the arson statute for a person to burn or destroy a house "in whole or in part" and it convicted Fordham of attempted arson "based on the evidence presented" and its "interpretation of the statue."

On appeal, Fordham argues that the evidence did not show that he intended to "burn or destroy" Kelley's house. Instead, he and Gowda intended only to "damage" the window, which differs from intending to "destroy" even part of the house. Next, he contends that the evidence failed to prove that the bundle taped to the windowsill was an "explosive device" under the arson statute. He emphasizes that the manufacturing an explosive device statute, which is in the same chapter as the arson statute, excludes fireworks from the definition of a "device." Code

§ 18.2-85.  He contends that it would be "absurd" to hold that fireworks constitute an "explosive devise" for the arson statute but not a "device" under the manufacturing statute.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024).  "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).  "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

In addition, "[i]ssues of statutory construction and application are questions of law reviewed *de novo* on appeal." *Osman v. Commonwealth*, 76 Va. App. 613, 642 (2023); *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 76 (2015).  "This same *de novo* standard of review applies to determining the proper definition of a particular word in a statute." *Joseph v. Commonwealth*, 64 Va. App. 332, 337 (2015).  An appellate court will "apply the plain meaning of the language appearing in the statute unless it is ambiguous or applying the plain language leads to an absurd

- 4 -

result." *Commonwealth v. Amos*, 287 Va. 301, 305-06 (2014). Where the legislature has not

defined a word, courts may rely on dictionary definitions to determine its ordinary meaning.

*Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 196 (2022).

I. Specific Intent

"The intent required to be proven in an attempted crime is the specific intent in the

person's mind to commit the particular crime for which the attempt is charged." *Fletcher v.

Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Wynn v. Commonwealth*, 5 Va. App. 283,

292 (1987)). "[T]he fact finder may infer that a person intends the immediate, direct, and

necessary consequences of his voluntary acts." *Id.* (alteration in original) (quoting *Moody v.

Commonwealth*, 28 Va. App. 702, 706-07 (1998)). "To prove intent based on a person's conduct

or statements, '[c]ircumstantial evidence is as competent and is entitled to as much weight as

direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis

except that of guilt.'" *Id.* at 506-07 (alteration in original) (quoting *Coleman v. Commonwealth*,

226 Va. 31, 53 (1983)).

Accordingly, to sustain a conviction of attempted arson, the evidence had to prove that

Fordham specifically intended to "burn[], *or* by use of any explosive device or substance

destroy[], in whole or in part, *or* cause[] to be burned or destroyed . . . any dwelling house."

Code § 18.2-77(A) (emphasis added). Use of the disjunctive "or" in the statute demonstrates that

there are several alternative ways to commit the offense. *See Massie v. Commonwealth*, 74

Va. App. 309, 325 (2022) ("Consistent with rules of English usage and grammar, we have

'previously explained that phrases separated by a disjunctive are independent alternative

choices.'" (quoting *Berry v. Barnes*, 72 Va. App. 281, 292 (2020))). Thus, a person commits

arson if he "burns . . . in whole or in part . . . any dwelling house." Code § 18.2-77(A); *see

Marable v. Commonwealth*, 27 Va. App. 505, 508-09 (1998) (fire spread from lit "loveseat" after

defendant threatened to burn the victim's house). He also commits arson if he, "by use of any explosive device or substance destroys, in whole or in part . . . any dwelling house." Code § 18.2-77(A); *see Davis v. Commonwealth*, 65 Va. App. 485, 493, 501 (2015) (sufficient evidence of attempted arson where the defendant removed a stove's burner, left the gas on, and rigged a lit candle near the gas to create "an explosive device").

To destroy something means "to ruin the structure . . . or condition of it." *Destroy*, *Webster's Third New International Dictionary Unabridged* (1981); *see also Lumbermen's Mut. Casualty Co. v. Keller*, 249 Va. 458, 460-61 (1995) ("destruction" in the insurance context "is often applied to an act which renders the subject useless for its intended purpose, though it does not literally demolish or annihilate it"). And the phrase "in part" means "with respect to a part rather than a whole" or "in some measure or degree." *Part*, *Webster's Third New International Dictionary Unabridged*, *supra*.

Here, the record evidence was sufficient to support the conclusion that Fordham specifically intended to *both* burn and destroy Kelley's home, in part. Fordham and Gowda taped together three "mortar shell" fireworks, attached them to a window at Kelley's home, and lit an incense stick connected to the fireworks' fuses. Had the fuses ignited as they intended, the direct and natural consequence of their actions would have been the production of flame against the partially wooden house structure and the destruction of the window by an incendiary explosion. Such an explosion would not merely have "damaged" the window, as Fordham alleges. Rather, it would have rendered at least the window, which was *a part* of the dwelling house, and all spaces connected to the window, "useless for its intended purpose" and, therefore, destroyed that part of the house. *Keller*, 249 Va. at 461. Further, the natural and probable consequence of igniting an incendiary device against wood is that the wood will ignite. *See Martin v. Westover Court Corp.*, 186 Va. 254, 258-60 (1947) (house fires caused by "exposed timbers and wooden

blocks" situated too closely to hot air ducts); *Lumbermen's Underwriting All. v. Can-Car, Inc.*, 645 F.2d 17, 18 (9th Cir. 1980) (fire caused by "an accumulation of pine needles, wood chips, and other combustible materials").

Contrary to Fordham's argument, Gowda's testimony that they intended to damage the window supports the conclusion that they meant to burn and destroy, in part, Kelley's house. He contends that an intent to merely damage, which he claims is reflected in Gowda's testimony, falls outside the scope of the arson statute. But Fordham overlooks Gowda's admission regarding their method of breaking the window: taping "mortar shell" fireworks to the wooden portion of a house and igniting an incense stick connected to their fuses. From this evidence, along with Gowda's statement that they intended to break the window, the court could reasonably infer that Fordham intended to cause a combustive blast and burn and destroy a part of Kelley's house. Because the court's findings were not plainly wrong, we will not reverse the conviction.

II. "Explosive Device"

Fordham also contends that the court erred in finding that the bundle placed on Kelley's window was "an explosive device." As noted above, however, a person commits arson if he *either* (1) "burns . . . in whole or in part . . . any dwelling house," or (2) "by use of any *explosive device* or substance destroys, in whole or in part . . . any dwelling house." Code § 18.2-77(A) (emphasis added). Because, as demonstrated above, the evidence demonstrates that Fordham specifically intended to burn part of Kelley's dwelling house, and that finding is independently sufficient to support the conviction, we need not address his argument that the bundle was an "explosive device" under the arson statute. *See Highlander v. Va. Dep't of Wildlife Res.*, 84 Va. App. 404, 424 (2025) ("[T]he doctrine of judicial restraint dictates that [the Court] decide

cases 'on the best and narrowest grounds available.'" (alterations in original) (quoting

*Commonwealth v. White*, 293 Va. 411, 419 (2017))).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*